CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 15 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **BRADLEY BRIAN MEREDITH,** | ) | Civil Action No. 7:12cv00450 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **ROBIN L. ELLIOT et. al,** | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

Plaintiff Bradley Brian Meredith, a Virginia prisoner proceeding *pro se*, filed this complaint for declaratory judgment, injunctive relief, and damages for alleged violations of his Sixth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Meredith alleges that defendants, Clerk of Court for Fluvanna County Robin Elliot, Sixteenth Judicial District Judge Dwight D. Johnson, and Virginia Commonwealth Assistant Attorney General Nicholas Simopoulos, denied his rights to representation and access to the courts in paternity and custody proceedings. The court grants Meredith's motion to proceed *in forma pauperis*, finds that Judge Johnson is entitled to absolute immunity and that Meredith has failed to state a claim upon which relief may be granted against either Simopoulos or Elliot, and dismisses *sua sponte* Meredith's claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).[1]

I.

The court discerns the following allegations from Meredith's complaint and supporting exhibits. Meredith has been incarcerated at Coffeewood Correctional Center and Albemarle-Charlottesville Joint Security Complex since August 21, 2009; at the time of his incarceration,

---

[1] See Michau v. Charleston County, 434 F.3d 725 (4th Cir. 2006) (Under 28 U.S.C. § 1915(e), which governs *in forma pauperis* filings in addition to complaints filed by prisoners, a district court must dismiss an action that the court finds to be frivolous or malicious or that fails to state a claim.).

Meredith's fiancée was expecting a child later determined to be his daughter. After his daughter's birth in January 2010, Meredith initiated a series of legal proceedings targeted at establishing his paternity and enforcing his rights as the child's father. The Fluvanna County Department of Social Services, as well as a guardian *ad litem* appointed to represent Meredith in custody proceedings, assisted Meredith at this stage. Due to his incarceration, Meredith was not eligible to take custody of his daughter, and the Fluvanna County Juvenile and Domestic Relations Court awarded sole legal and physical custody to the child's mother. Since that time, Meredith has made repeated attempts to solicit legal advice pertaining to his daughter's custody arrangement from a number of sources. Meredith has also sought to have certain orders entered by the Fluvanna County Juvenile and Domestic Relations Court "redressed." When his efforts failed to produce the outcomes he desired, Meredith sent a letter to Elliot apprising Elliot that he would be initiating an action pursuant to 42 U.S.C. § 1983 against her. As Elliot's counsel, Simopoulos responded to Meredith in a letter requesting that Meredith direct future correspondence to him rather than Elliot.

## II.

Meredith alleges that Judge Johnson violated his constitutional rights by not allowing him to address the court or to appear before an intake officer at the Court Services Unit office; by denying his motion for show cause that "would have redressed the fact that Defendant Johnson's Court Order . . . was violated by [his child's mother]"; by interfering with Meredith's access to court records regarding visitation and custody of his minor child by sealing particular records; "by failing to allow Plaintiff proper access to modify the current Court order"; by failing to enforce a court order; by failing to appoint Meredith "competent counsel as guardian *ad litem* to represent Plaintiff in civil matters related to . . . his minor daughter"; and by failing to allow

2

Meredith to file *pro se* petitions. Because this court finds that Judge Johnson was performing the functions of his office and acting within his judicial capacity at all stages that are the subject of this complaint, the court finds that Judge Johnson is subject to absolute judicial immunity and dismisses the complaint without prejudice.

It is well-established that judges are absolutely immune from liability for damages arising out of their judicial actions. Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985) (citing Bradley v. Fisher, 80 U.S. 335 (1872); Stump v. Sparkman, 435 U.S. 349 (1978)). Absolute immunity is designed to free the judicial process from harassment and intimidation. The doctrine of judicial immunity is expansive. Cleavinger v. Saxner, 474 U.S. 193, 199–200 (1985) (quoting Bradley, 80 U.S. at 347). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." Stump, 435 U.S. at 356–57. Rather, the doctrine of judicial immunity is only overcome when a judge's actions are not undertaken in his judicial capacity or when they are taken in the complete absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11–12 (1991). With respect to the first inquiry, courts must "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." Forrester v. White, 484 U.S. 219, 227 (1988). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. With respect to the second inquiry, courts must distinguish between actions that are taken in the "clear absence of all jurisdiction" over the subject matter, which are not afforded the protection of judicial immunity, and actions that are merely in "excess of jurisdiction," which are afforded such protection. Id. at 356. The Supreme Court has emphasized that "the scope of the

3

judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Id.

From the complaint, it is clear that in making the rulings on Meredith's motions, Judge Johnson was performing the functions required by his position as judge. Id. at 362. Furthermore, Meredith's submissions to the court clearly indicate that he considered himself to be dealing with Judge Johnson in his judicial capacity. Id. Judge Johnson's actions relating to Meredith's motions and other demands relating to his child's custody are clearly judicial in nature, and thus, the court finds that Judge Johnson is entitled to judicial immunity.[2]

### III.

Very liberally construed, Meredith claims that Elliot denied his access to the courts.[3] While prisoners have a constitutional right of access to the courts, Meredith has failed to plausibly allege Elliot denied that right; therefore the court dismisses this claim for failure to state a claim upon which relief may be granted.[4]

---

[2] The Rooker-Feldman doctrine also bars Meredith's claims arising out of Judge Johnson's orders. Under the Rooker-Feldman doctrine, federal district courts do not have subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Even "[i]f the state-court decision was wrong, 'that [does] not make the judgment void, but merely open to reversal or modification in an appropriate and timely appellate proceeding.'" Id. (quoting Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923)). The venue for such a challenge is the court that rendered the decision or the appropriate state appellate court.

[3] Although the court has liberally construed Meredith's claim as a denial of his right of access to the courts, he has in fact framed the issue as implicating his Sixth Amendment right to counsel. The Supreme Court has clearly instructed that the Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (internal quotation marks omitted). "The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any 'criminal prosecutio[n],' . . . the accused shall not be left to his own devices in facing the 'prosecutorial forces of organized society.'" Moran v. Burbine, 475 U.S. 412, 428 (1986) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)). "By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation. For it is only then that the assistance of one versed in the 'intricacies . . . of law' is needed to assure that the prosecution's case encounters 'the crucible of meaningful adversarial testing.'" Moran, 475 U.S. at 428 (quoting United States v. Cronic, 466 U.S. 648, 656 (1984)).
   In any event, it was the judge who had the authority to appoint counsel, and he declined to do so.

[4] Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), a court shall "at any time" dismiss an *in forma pauperis* complaint if it is frivolous or malicious, or if it "fails to state a claim upon which relief may be granted." "[A] judge

4

"The right of access to the courts . . . is founded in the Due Process clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." Wolff v. McDonnell, 418 U.S. 539, 579 (1974). "In order to establish a claim of denial of access to the courts, an inmate cannot rely on conclusory allegations but must instead allege an actual injury or specific harm or prejudice that has resulted from the denial." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Relief from an interference of this basic right of access can be sought through an action under 42 U.S.C. § 1983. To state a cause of action under § 1983, a plaintiff must allege facts indicating that plaintiff has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

Meredith does not allege any facts that plausibly suggest Elliot violated any of his constitutional rights, nor does he suggest an actual injury, specific harm, or prejudice resulting from the alleged denial. For these reasons, Meredith's complaint must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.

Meredith alleges that both Elliot and Simopoulos have violated his rights to equal protection of the law by "not affording him the same rights and privileges of persons not incarcerated who would be able, personally, to address the court or to appear before an intake

---

must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). The court construes *pro se* complaints liberally, imposing "less stringent standards than formal pleadings drafted by lawyers." See id. (internal quotation marks and citation omitted). Even still, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Atherton v. D.C. Office of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("[While *pro se* complaints] must be held to less stringent standards than formal pleadings[,] . . . even a *pro se* complainant must plead factual matter that permits the court to infer more than the mere possibility of misconduct.") (internal quotation marks and citations omitted).

5

officer at a Court Services Unit office in order to perfect a petition or motion for change in the current court order." Meredith alleges further that Simopoulos violated his right to equal protection through "intimidation" and "manipulation" by writing that Meredith direct future correspondence to him. Meredith's complaint is frivolous and does not contain sufficient facts that, if taken as true, would support a claim to relief that is plausible on its face. Therefore, the court dismisses Meredith's claims against both Elliot and Simopoulos pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1982). To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination;" once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–65 (1977). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003). Mere conclusory allegations of discrimination are insufficient to state a claim. Spaulding v. Dixon, No. 90-7315, 1990 U.S.App. LEXIS 15560, *2, 1990 WL 126136 (4th Cir. Sept. 4, 1990); Chapman v. Reynolds, 378 F.Supp. 1137, 1139 (W.D. Va. 1974).

6

Meredith failed to state a sufficient allegation of a Fourteenth Amendment violation by complaining that Elliot was "not affording him [Meredith] the same rights and privileges of persons not incarcerated." (Pl. Compl. 11, ECF No. 1.) Meredith has stated nothing more than mere conclusory allegations that fail to establish any improper motive on Elliot's behalf. See Hansen, 326 F.3d at 584. Therefore, the court dismisses Meredith's complaint against Elliot for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Finally, Meredith builds his allegations of equal protection violations against Simopoulos based on the single letter Simopoulos sent Meredith. This claim is plainly frivolous and does not constitute a cognizable equal protection violation. Accordingly, the court dismisses Meredith's complaint against Simopoulos as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

V.

Based on the foregoing, the court dismissed Meredith's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) because it is frivolousness and fails to state a claim.

The Clerk is directed to send a certified copy of this Memorandum Order and accompanying Order to the plaintiff.

**ENTER**: October 15, 2012.

_____
UNITED STATES DISTRICT JUDGE